UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTINE SHANAFELT and
STAFF SERGEANT DAMON SHANAFELT,
     Plaintiffs,                       CIVIL ACTION NO.
                                         17-10394-MBB
     v.

DEPARTMENT OF VETERAN AFFAIRS and
UNITED STATES OF AMERICA,
     Defendants.

**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**
**(DOCKET ENTRY # 17)**

**July 23, 2018**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") and Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)") filed by defendants Department of Veteran Affairs of the United States of America ("the VA") and the United States of America ("the United States") (collectively "defendants"). (Docket Entry # 17). Plaintiffs Christine Shanafelt ("Shanafelt") and United States Army Reserve Staff Sergeant Damon Shanafelt ("Sgt. Shanafelt") oppose the motion. (Docket Entry # 20). After conducting a hearing, this court took the motion (Docket Entry # 17) under advisement.

PROCEDURAL BACKGROUND

The parties' dispute arises out of a Servicemember's Group Life Insurance Policy ("SGLI") on the life of Shanafelt's

husband, Sgt. Shanafelt, that named Shanafelt as the sole
beneficiary. (Docket Entry # 1). The two-count complaint sets
out a claim against defendants for negligence under the Federal
Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 ("section 1346")
(Count I); and a claim for breach of contract (Count II).
(Docket Entry # 1).

Defendants aptly point out (Docket Entry # 18, n.2) that
the United States is the only proper party under the FTCA. See
Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000) ("FTCA
requires that the named defendant in an FTCA action be the
United States and only the United States") (citing 28 U.S.C. §§
1346(b), 2674, 2679(a)). Although the argument only absolves
the VA of liability, it provides an alternative ground to
dismiss the claims against the VA.[1]

Separately, neither party addresses whether Sgt. Shanafelt,
as opposed to the representative of his estate, is a proper
party. The complaint simply describes plaintiff as Sgt.
Shanafelt's widow. In addition, neither party addresses or
explains why Sgt. Shanafelt has a cause of action for negligence
that allegedly took place after his death. "A person who dies

---

[1] Shanafelt does not address defendants' argument that the
United States is the only proper party under the FTCA for the
negligence claim as well as for the contract claim. She
therefore waives any argument to the contrary. See Vallejo v.
Santini-Padilla, 607 F.3d 1, 7 n.4 (1st Cir. 2010); Coons v.
Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010).

prior to filing suit is not a legal entity." <u>Adelsberger v.</u>

<u>United States</u>, 58 Fed. Cl. 616, 618 (2003) (collecting cases);

<u>see</u> <u>also</u> <u>Chorney v. Callahan</u>, 135 F. Supp. 35, 36 (D. Mass.

1955) (Fed. R. Civ. P. 25 did not apply because "action was

brought against a named defendant who was already dead" and "a

dead man obviously cannot be named [a] party defendant in an

action"). The "majority of federal and state" courts

considering "the issue agree that an action filed in the name of

a pre-deceased plaintiff is not viable." <u>In re Asbestos Product</u>

<u>Liability Litigation, (No. VI)</u>, 311 F.R.D. 152, 154 (E.D. Pa.

2015). Accordingly, Sgt. Shanafelt is not a legal entity.

Because he is not a legal entity and cannot file this action as

a plaintiff, he is dismissed as a party. Even assuming for

purposes of argument that he could proceed as a plaintiff, the

complaint is subject to dismissal for reasons stated below.[2]

STANDARD OF REVIEW

In reviewing the sufficiency of a complaint under Rule

12(b)(6), the complaint must contain enough facts that, if

presumed true, "state a claim to relief that is plausible on its

face." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570 (2007);

<u>Miller v. Town of Wenham</u>, 833 F.3d 46, 51 (1st Cir. 2016). The

---

[2] For ease of reference and because Sgt. Shanafelt is not a
legal entity, this court frames the arguments as brought by
Shanafelt.

3

"standard is 'not akin to a probability requirement, but it asks
for more than a sheer possibility that a defendant has acted
unlawfully.'"  Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir.
2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009));
Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st
Cir. 2011).  Factual allegations in the complaint are taken as
true and reasonable inferences are drawn in favor of the
plaintiff.  Ashcroft, 556 U.S. at 678; Sanders v. Phoenix Ins.
Co., 843 F.3d 37, 42 (1st Cir. 2016).  Exhibits A through D
attached to the complaint (Docket Entry # 1-2, Ex. A-D) are
"properly considered part of the pleading for all purposes,"
including Rule 12(b)(6).  Trans-Spec Truck Service, Inc. v.
Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); Fed. R.
Civ. P. 10(c).  The court may also consider a limited category
of documents outside the complaint without converting the motion
into one for summary judgment.  Such documents include public
records, "'facts susceptible to judicial notice,'" and documents
sufficiently referred to in the complaint.  Butler v. Balolia,
736 F.3d 609, 611 (1st Cir. 2013) (supplementing facts in
complaint "by examining 'documents incorporated by reference
into the complaint, matters of public record, and facts
susceptible to judicial notice'").  Legal conclusions in a
complaint are not part of the Rule 12(b)(6) record.  See In re
Ariad Pharmacy, Inc. Securities Litigation, 842 F.3d 744, 750

4

(1st Cir. 2016) (refusing to credit legal conclusions in
reviewing motion to dismiss).

When considering a Rule 12(b)(1) motion, this court must
credit the plaintiff's well-pled factual allegations and draw
all reasonable inferences in the plaintiff's favor.  Merlonghi
v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing
Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir.
2001)); Sánchez ex rel. D.R.-S. v. U.S., 671 F.3d 86, 92 (1st
Cir. 2012) ("credit[ing] the plaintiff's well-pled factual
allegations and draw[ing] all reasonable inferences in the
plaintiff's favor" under Rule 12(b)(1)).  "The district court
may also 'consider whatever evidence has been submitted, such as
the depositions and exhibits submitted.'"  Merlonghi v. United
States, 620 F.3d at 54 (quoting Aversa v. United States, 99 F.3d
1200, 1210 (1st Cir. 1996)).  Where, as here, a defendant
challenges subject matter jurisdiction, the plaintiff bears the
burden of proving jurisdiction.  Johansen v. United States, 506
F.3d 65, 68 (1st Cir. 2007).  Dismissal is only appropriate when
the facts alleged in the complaint, taken as true, do not
support a finding of federal subject matter jurisdiction.
Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).
Finally, "'Federal courts are courts of limited jurisdiction'"
and "[t]he existence of subject-matter jurisdiction" is
therefore "'never presumed.'"  Fafel v. Dipaola, 399 F.3d 403,

410 (1st Cir. 2005) (quoting Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 377 (1994), and Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)).

## FACTUAL BACKGROUND

The VA provides certain benefits to servicemen, including life insurance in the form of SGLI policies. (Docket Entry # 1-2); see also Servicemens' Group Life Insurance Act of 1965, as amended, 38 U.S.C. §§ 1965 et seq. ("SGLIA"). Prudential Insurance Company of America ("Prudential"), the administrator of Sgt. Shanafelt's policy, administers these SGLI policies through its Office of Servicemembers' Group Life Insurance ("OSGLI"). (Docket Entry # 1-2). On July 31, 2015, six days after returning home from his annual Army Reserve Training, Sgt. Shanafelt committed suicide. (Docket Entry # 1). At the time of his death, Sgt. Shanafelt was married to Shanafelt, the named beneficiary under his $400,000 SGLI policy. (Docket Entry # 1).

On August 2, 2015, two Certified Casualty Officers ("CCOs") from Sgt. Shanafelt's unit, Sergeant Walker and Lieutenant Goslin, visited Shanafelt at her home.[3] (Docket Entry # 1). Sergeant Walker and Lieutenant Goslin presented Shanafelt with a file containing information concerning Sgt. Shanafelt's payable benefits, including information about the SGLI policy. (Docket

---

[3] The complaint does not include Sergeant Walker and Lieutenant Goslin's first names.

6

Entry # 1). During their visit and without Shanafelt's consent, Sergeant Walker and Lieutenant Goslin "divulged to a room full of people, sensitive benefit information," including Shanafelt's entitlement to the $400,000 of SGLI proceeds. (Docket Entry # 1). Shanafelt believes that it was from this exchange that Sgt. Shanafelt's ex-spouse, G. Fillipone ("Fillipone"), learned about Sgt. Shanafelt's death and the SGLI policy. (Docket Entry # 1).

On August 3, 2015, Fillipone submitted a formal claim to Prudential for $250,000 under the SGLI policy on the basis that "her children were the rightful beneficiaries." (Docket Entry # 1). In a letter dated September 9, 2015, Prudential notified Shanafelt that she was unable to receive any SGLI benefits at that time due to an adverse claim on Sgt. Shanafelt's policy. (Docket Entry ## 1, 1-2).

After receiving Fillipone's claim, Prudential undertook a 36-day review and, at the conclusion of the review, issued a decision granting Fillipone the right to bring a claim for the proceeds in court. (Docket Entry # 1). During the review process, the VA indicated to Shanafelt that the matter of the insurance proceeds was "under investigation." (Docket Entry # 1). According to the complaint, it also "became apparent" during the 36-day investigative review that "the VA" was involved in the investigation and subsequent decision to allow Fillipone the right to sue in court. (Docket Entry # 1).

On the 30th day of the investigation, Shanafelt was served with a restraining order and thereafter a complaint filed by Fillipone in Middlesex County Probate and Family Court ("the probate court"). (Docket Entry # 1). Fillipone filed the probate court action against Prudential as well as Shanafelt. (Docket Entry # 1). Prudential thereafter removed the action to the United States District Court for the District of Massachusetts. See Fillipone v. Shanafelt et. al, Civil Action No. 15-13680-LTS.[4] As a result of the lawsuit, Shanafelt hired an attorney "on a contingency fee basis" and incurred a total cost of $128,000 in defending the lawsuit. (Docket Entry # 1).

On or about May 31, 2016, Shanafelt, through her attorney, "sent via certified mail" a "Notification of Incident and Claim for Damages under the Federal Tort[] Claim[s] Act & Military Act" ("the notification") to the VA. (Docket Entry ## 1, 1-2). By letter dated August 5, 2016, the VA advised Shanafelt that an investigator, staff attorney Lisa Wolfe, Esq. ("Attorney Wolfe"), was assigned to investigate the claims outlined in the notification. (Docket Entry # 1). Shanafelt's attorney attempted several times without success "to obtain a status update" concerning the claims in the notification. More than

---

[4] This court takes judicial notice of the removal and that Shanafelt also filed suit against Prudential.

six months after sending the notification, Shanafelt filed the complaint in this action. (Docket Entry # 1).

DISCUSSION

In Count I, Shanafelt asserts that the actions of VA employees constitute negligence under both federal and Massachusetts law. (Docket Entry # 1). Specifically, she alleges that, "Federal and Massachusetts state law imposes a duty of care upon the VA" and that the VA breached this duty with respect to "the handling, maintenance, and care of Sgt. Shanafelt's SGLI policy," its disbursement of benefits, and by allowing Fillipone to initiate a claim for the benefits in the probate court. (Docket Entry # 1). In Count II, Shanafelt contends that defendants breached the SGLI policy agreement by failing to disburse the $400,000 in payable benefits to Shanafelt. (Docket Entry # 1). She asserts both claims against both defendants.

Defendants move to dismiss the claims under Rule 12(b)(1) and Rule 12(b)(6). More narrowly, defendants initially seek to dismiss the complaint for lack of subject matter jurisdiction on the basis of sovereign immunity. (Docket Entry # 18). While defendants argue that the SGLIA preserves sovereign immunity in this action, Shanafelt contends that section 1346(b)(1) of the FTCA waived defendants' sovereign immunity for both counts. Defendants maintain that to the extent that their sovereign

9

immunity is waived, if at all, "the discretionary function exception to the [FTCA]" applies. (Docket Entry # 18). Defendants further argue that even if this court finds subject matter jurisdiction, both counts of the complaint are subject to a Rule 12(b)(6) dismissal. (Docket Entry # 18, p. 11).

I.   Negligence Claim

     A.   Sovereign Immunity under SGLIA

     "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1994). Sovereign immunity is addressed first because it is "jurisdictional in nature." Id. In general, the FTCA waives sovereign immunity for the negligent actions of federal employees. See 28 U.S.C. § 1346(b)(1). Separate from any waiver of sovereign immunity under the FTCA, the SLGIA sets forth its own waiver of sovereign immunity for "any civil action or claim against the United States *founded upon*" the SGLIA subchapter. 38 U.S.C. § 1975 ("section 1975") (emphasis added). Determining the validity of Shanafelt's claim requires a threshold analysis concerning these dual waivers of sovereign immunity. While defendants argue under the aegis of the SGLIA (Docket Entry # 18, pp. 7-8), Shanafelt submits that the employee negligence provision of the FTCA applies. (Docket Entry ## 1, 20); see 28 U.S.C. § 1346(b)(1). The First Circuit has not addressed the relationship between the separate waivers

10

and, namely, whether the SGLIA prevents a plaintiff from asserting a claim under the FTCA.  Only a handful of courts elsewhere have addressed this issue.

The Second Circuit in Devlin v. United States, 352 F.3d 525 (2nd Cir. 2003), analyzed the interplay between the FTCA and the Federal Employee's Group Life Insurance Act ("FEGLIA"), a statutory program similar to the SGLIA.  Id. at 544.  The court held that the plaintiff's FTCA claim was not "preempted" by the federal insurance statute because the claim did not "seek to function as an alternative enforcement mechanism to obtain [policy] benefits."  Id.  As the plaintiff's claim neither attempted to substitute a policy beneficiary, nor sought to estop payment of policy benefits, but rather was a claim for damages arising out of the negligent misconduct of government employees, it was a permissible action under the FTCA.[5]  Id. at

---

[5]  In Devlin, the plaintiff asserted that by failing to properly file her claim for insurance benefits, the government was negligent in a duty it undertook.  Devlin, 352 F.3d at 528. Specifically, by failing to administratively file a policy holder's change of beneficiary form, the government caused the plaintiff to lose the insurance benefits.  Id. at 527-28.  The government argued that by enacting the legislative provisions of FEGLIA, Congress evinced an intent to make FEGLIA's statutory framework "the sole and exclusive mechanism for determining and deciding all claims founded upon FEGLIA."  Id. at 544.  The court, however, disagreed and determined that her particular negligence allegation was a viable claim under section 1346(b). Id. at 534-35, 544.

544-45.  Here too, Shanafelt's claim does not seek to estop or obtain policy benefits or to change a policy beneficiary.

The court in Pummill v. United States, No. 7:06-CV-16, 2008 WL 1987255 (E.D.N.C. May 7, 2008), analyzed the issue with respect to the SGLIA and likewise held that the SGLIA did not "preempt" an action rightfully brought under the FTCA.  Id. at *3-4.  There too, the plaintiff did not seek to change a policy beneficiary, nor collect funds on a policy; she sought to recover damages suffered as a result of the government's negligence.[6]  Id. at *4.  Accordingly, the court allowed her FTCA claim to proceed.  Id. (relying on Devlin v. United States, 352 F.3d at 544-45.[7]

In the case at bar, Shanafelt's claim is akin to those in Devlin and Pummill.  The gravamen of Shanafelt's argument is negligence, namely, the negligence of the CCOs and government employees charged with dispersing the funds under Sgt. Shanafelt's policy.  Moreover, the damages she seeks to recover are not funds from Sgt. Shanafelt's policy itself but rather are the amount Shanafelt lost as a consequence of the probate court

---

[6]  In Pummill, the plaintiff alleged that the government was negligent by failing to process her deceased husband's life insurance beneficiary form.  Pummill, 2008 WL 1987255, at *2-4. As a result of this negligence, she suffered economic damages. Id. at *2.
[7]  Moreover, in Nixon v. United States, 916 F. Supp. 2d 855 (N.D. Ill. 2013), the court allowed the FTCA and FEGLIA to serve as concurrent avenues for relief.  See id. at 859-61.

action.  Shanafelt's negligence claim is therefore

distinguishable from those cases where a claim was barred on the

basis of sovereign immunity under the relevant federal insurance

statute.

Relying on Denton v. United States, 638 F.2d 1218, 1220

(9th Cir. 1981), defendants additionally argue that the SGLIA's

waiver of sovereign immunity extends only to claims based upon

express or implied duties in the SGLIA subchapter.  (Docket

Entry # 18, p. 7).  In Denton, the plaintiff's suit was to

recover the wrongfully denied proceeds of an SGLI policy.[8]  See

Denton, 638 F.2d at 1219.  While the claim at issue in Denton is

distinguishable from Shanafelt's negligence claim because

Shanafelt does not seek to compel payment of the proceeds of

Sgt. Shanafelt's policy, Denton also elucidates the scope of the

SGLIA's waiver of sovereign immunity.  In Denton, the

controlling SGLIA waiver was codified in 38 U.S.C. § 775, the

predecessor to section 1975.  To determine whether the claim was

"founded upon" the SGLIA, the Ninth Circuit examined whether the

SGLIA imposed a duty on the United States to notify a

servicemember of his SGLI policy eligibility.  See id. at 1220.

---

[8]  This was also the case in Shannon v. United States, 417 F.2d
256, 261 (5th Cir. 1969); McNabb v. U.S. Dep't of the Army, 623
F.App'x 870 (9th Cir. 2015), and other cases that defendants
cite.

Denton adhered to a tailored reading of the SGLIA's waiver, limiting it exclusively to "actions alleging breach of an explicit or implicit duty under the SGLI subchapter." Id. at 1220; accord 38 C.F.R. § 9.13. The court concluded that neither the language of the SGLIA nor the legislative history supported the existence of a duty to notify a serviceman of coverage eligibility. Id. Accordingly, sovereign immunity was not waived under the SGLIA. Id.

Section 1975 and its implementing regulations support this interpretation. The VA is endowed with the authority to enact rules and regulations concerning its practices. See 38 U.S.C. § 501; see also Ridgway, 454 U.S. 46, 53 (1981) (noting VA administrator's general rulemaking authority). "Principles of administrative law require that courts defer to reasonable interpretations by an agency on matters committed to the agency's expertise by Congress." Aronov v. Napolitano, 562 F.3d 84, 96 (1st Cir. 2009) (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984)). "If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Chevron, 467 U.S. at 843; see also Doe v. Cape Elizabeth Sch. Dist., 832 F.3d 69, 78 (1st Cir. 2016) (affording Chevron deference to agency's formal and informal expressions when based

on permissible construction of the statutory language) (citing
Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 208–09 (2011));
Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 894
(9th Cir. 1995).  Pursuant to its authority, the VA interprets
the silent or ambiguous language of the SGLIA to require a
breach of duty by the VA to recover under an SGLI policy.  See
38 C.F.R. § 9.13 ("regulation 9.13").  Specifically, regulation
9.13 provides that, "[a]ctions at law or in equity to recover on
the policy, in which there is not alleged any *breach* of any
*obligation undertaken* by the United States, should be brought
against the insurer."  Id. (emphasis added).  Accordingly, under
section 1975, the government only waives sovereign immunity for
its duties, i.e., its obligations undertaken, pursuant to the
statute.

A number of courts likewise adhere to this tailored reading
of the SGLIA's waiver.  See McNabb v. U.S. Dep't of the Army,
623 F. App'x 870, 872 (9th Cir. 2015) (refusing to waive
sovereign immunity under section 1975 because VA had no express
or implied duty to process claims) (relying on Denton, 638 F.2d
at 1220) (unpublished); Eads v. Prudential Ins. Co. of America,
2014 WL 3667953, at *6 (S.D. Ind. July 22, 2014) (refusing to
waive sovereign immunity under section 1975 because VA had no
express or implied duty to make coverage determinations)
(relying on Denton, 638 F.2d at 1220); Turney v. United States,

15

525 F. Supp 675, 678 (D. Md. 1981) (preserving sovereign

immunity because there was no duty to notify SGLI claimant of

filing deadlines); see also Shannon v. United States, 417 F.2d

at 261 (noting that government involvement under SGLIA was "not

necessarily . . . consent to be sued in a non-tort action for

damages at the behest of any claimant who has been denied group

insurance proceeds").[9]  Moreover, the duty to pay SGLI proceeds

rests solely on the insurer, Prudential.  See Ridgway v.

Ridgway, 454 U.S. at 51 (providing that under the design of the

SGLIA, "the Government is the policyholder, rather than the

insurer"); 38 C.F.R. § 9.13; Shannon v. United States, 417 F.2d

at 261 (providing that although federal government holds

considerable control over creation of SGLI policies, it is not

treated as an insurer).

In short, "the Ninth and the Fifth Circuits" recognize that

the VA's or the United States' "consent to be sued under

[section 1975] 'extends only to actions alleging breach of an

---

[9]  In Shannon, the gravamen of the complaint was that the
government owed and breached a legal duty, specifically, a duty
to maintain accurate records in conjunction with Prudential.
See Shannon, 417 F.2d 256, 258.  Relying on an analogous federal
life insurance provision, the Federal Employees Group Life
Insurance Act, 5 U.S.C. §§ 8701 et seq., the court restricted
the SGLI waiver to actions involving "some right created by
[the] Act and a breach by the Government of some duty with
respect thereto."  Shannon v. United States, 417 F.2d at 261.
The court, however, refused to characterize the plaintiff's
action under the FTCA and instead solely applied the waiver
provisions of the SGLIA.

explicit or implicit duty under the [SGLIA] subchapter.'" <u>Eads</u>,
2014 WL 3667953, at *4 (quoting <u>Denton</u>, 638 F.2d at 1220, and
citing <u>Shannon</u>, 417 F.2d at 261).  Regulation 9.13 similarly
interprets section 1975 as allowing suit against the VA (or the
United States as the proper party under the FTCA) only for
breach of an obligation or duty undertaken by the VA.  38 C.F.R.
§ 9.13.  The SGLIA therefore only waives sovereign immunity for
breaches under the duties set forth by the statute and the
obligations the government undertakes.  Under the record before
this court, and for purposes of sovereign immunity, the VA did
not have a duty to process Shanafelt's claim, <u>see</u> <u>McNabb</u>, 623 F.
App'x at 872, a duty to make a coverage determination in her
favor, <u>see</u> <u>Eads</u>, 2014 WL 3667953, at *6, or a duty to notify
Shanafelt of filing deadlines, <u>see</u> <u>Turney</u>, 525 F. Supp. at 678.

In light of the foregoing, there is no duty on the part of
the VA to pay the claim or determine the coverage afforded
Fillipone's children, and, hence, no waiver of defendants'
sovereign immunity.  Accordingly, Shanafelt's claim is not one
"founded upon" the SGLIA sufficient to waive either the VA's or
the United States' sovereign immunity under section 1975.  More
broadly, similar to <u>Devlin</u>, 352 F.3d at 544-45, and <u>Pummill</u>,
2008 WL 1987255, at *3-4, Shanafelt's negligence claim under the
FTCA does not constitute the type of claim subject to the SGLIA.

B.  <u>Sovereign Immunity under FTCA</u>

Turning to the FTCA, the relevant provision, section 1346(b)(1), "represents a general waiver of federal sovereign immunity for tortious acts and omissions of federal employees. But that general waiver is subject to a litany of exceptions." Limone v. United States, 579 F.3d 79, 88 (1st Cir. 2009); see also 28 U.S.C. § 1346(b)(1).[10]  Moreover, any waiver of sovereign immunity is "'construed strictly in favor of the federal government, and must not be enlarged beyond such boundaries as its language plainly requires.'"  Bolduc v. United States, 402 F.3d 50, 56 (1st Cir. 2005) (quoting United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994)); see also Federal Aviation Administration v. Cooper, 566 U.S. 284, 290 (2012).  While section 1346(b) generally allows plaintiffs to bring claims against the United States "to the same extent as a private party for certain torts of federal employees acting within the scope of their employment," United States v. Orleans, 425 U.S. 807,

---

[10]  Section 1346(b)(1) provides jurisdiction in the district courts:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

813 (1976),[11] defendants rely on the discretionary function exception, which bars claims "based upon [a federal agency's or employee's] exercise or performance or the failure to exercise or perform a discretionary function or duty.'" Berkovitz by Berkovitz v. United States, 486 U.S. 531, 531 (1988) (quoting 28 U.S.C. § 2860(a)). The exception does not preclude liability for all regulatory actions, but does shield those that "involve an element of judgment or choice and are based on public policy considerations." Id. The Supreme Court's decision in Berkovitz articulates a two-prong test for the discretionary function exception. Id. at 536.

First, the challenged conduct must in fact be discretionary. Id. More specifically, the court must ascertain whether "the conduct involves an element of judgment or choice." Id.; see also United States v. Gaubert, 499 U.S. 315, 322 (1991). "'[I]t is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies." United States v. Gaubert, 499 U.S. at 322. If a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the exception

---

[11] The FTCA provides that the law of the state where the act or omission occurred determines the liability of the United States. See 28 U.S.C. § 1346(b)(1).

does not apply because "the employee has no rightful option but to adhere to the directive." Berkovitz, 486 U.S. at 536 (1988).

The second prong of the test is whether, in scope, the conduct is "of the kind that the discretionary function exception was designed to shield." Id. This analysis turns on "whether that judgment or choice was susceptible to policy-related analysis." United States v. Gaubert, 499 U.S. at 325. This prong follows Congress' intent to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." Berkovitz, 486 U.S. at 536-537 (quoting United States v. Varig Airlines, 467. U.S. 797, 814 (1984)). The discretionary function exception therefore applies to bar Shanafelt's negligence claim if the conduct underlying the "claim *both* (1) 'involves an element of judgment or choice,' and (2) 'was susceptible to policy-related analysis.'" Sánchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 93 (1st Cir. 2012) (quoting Limone v. United States, 579 F.3d at 101) (citations omitted and emphasis added); see also Berkovitz, 486 U.S. at 536.

Shanafelt maintains that the SGLIA establishes a non-discretionary procedure for the VA to follow regarding disbursement of the proceeds of Sgt. Shanafelt's policy. (Docket Entry # 20). In support of this contention, she points to the SGLIA itself, which provides that the amount of insurance

"shall be paid, upon establishment of a valid claim." 38 U.S.C.
§ 1970. As explained previously, this court declines to find a
duty to pay on the part of the VA or a duty to prevent
Fillipone's adverse claim. See Williams v. United States, No.
08–5081, 2009 WL 799974, at *2 (E.D. La. Mar. 19, 2009) (noting
claim for unpaid benefits lies solely with insurer); Mosby v.
United States, 423 F. Supp. 689, 689 (N.D. Ohio 1976) (noting
government is not insurer under SGLI policy); Jackson v. United
States, 398 F. Supp. 607, 608-09 (N. D. Miss. 1975) (holding
actions for nonpayment or other breach of SGLI policy "lie
against the private insurer, and not the government"); Riggans
v. United States, 315 F. Supp. 1405 (W. D. Pa. 1970); Kercher v.
United States, 300 F. Supp. 1125, 1125 (D. Mont. 1969).

Even assuming for purposes of argument that the VA is
involved with certifying or facilitating the payment of the SGLI
benefits to a beneficiary, see 38 U.S.C. § 5120, the choice to
extend payment to an SGLI beneficiary is a discretionary
function within the meaning of 28 U.S.C. § 2680(a). See Jahr v.
United States, 259 F. Supp. 3d 1158, 1163-64 (W.D. Wash. 2017).
In Jahr v. United States, 259 F. Supp. 3d at 1163, the court
analyzed whether the discretionary function exception precluded
the plaintiff's negligent disbursement of proceeds claim.[12]

---

[12] The dispute in Jahr arose out of a complicated set of facts.
Briefly summarized, the plaintiffs' daughter and her boyfriend

21

Specifically, the plaintiffs alleged that the disbursement of SGLI proceeds to the policy's beneficiary was negligent because, at the time of disbursement, the beneficiary was a "person of interest" in the policyholder's death. Id. at 1163. The court noted that while the SGLIA requires payment "upon the establishment of a valid claim," 38 U.S.C. § 1970, neither the SGLIA nor any regulation provides guidance for determining whether a beneficiary's claim is 'valid,' nor does it prohibit payment to a person of interest." Jahr, 259 F. Supp. 3d at 1164. Accordingly, to the extent, if any, that the VA was involved in facilitating payment on the SGLI policy, the VA did not go against any set guidelines when choosing to disburse the proceeds to the beneficiary and "the lack of statutory or regulatory guidance regarding what constitutes a 'valid' SGLI claim indicates that casualty affairs officers must exercise an element of judgment in determining the validity of a beneficiary's claim." Id. at 1164. Accordingly, the choice to

---

were murdered by four Army soldiers. Jahr, 259 F.Supp.3d at 1161. One of the soldiers involved in the murder had also murdered his own wife. Id. Prior to the murder of the plaintiffs' daughter, and while the wife's death was still under investigation, SGLI benefits were paid to the soldier, even though he was a "person of interest" in the investigation into his wife's death. Id. The SGLI proceeds were then used to purchase weapons, including the one used to kill the plaintiffs' daughter. Id. Accordingly, the plaintiffs alleged that because the soldier was a "person of interest," disbursing the SGLI benefits to him was negligent and ultimately harmed the plaintiffs. Id. at 1161-62.

disburse the SGLI proceeds was a valid discretionary act that precluded the plaintiffs' negligent claim.  Id.

Here, when presented with two competing claims for benefits under Sgt. Shanafelt's policy, Prudential and the VA sought to establish which claim was in fact valid.  Hence, an investigation was initiated and the funds were withheld until the issue was settled.  Adhering to Berkovitz and Gaubert, the VA, in light of Fillipone's competing claim, exercised an available choice of withholding the proceeds of Sgt. Shanafelt's policy.  Moreover, this conduct was rooted in a policy-related analysis.  Here, as in Jahr, the disbursement of life-insurance proceeds was at the discretion of Prudential and, by extension, likewise in the discretion of the VA.  See Jahr, 259 F. Supp. 3d at 1164.  "The statute governing SGLI payments instructs only life-insurance proceeds to be paid to the policyholder's surviving beneficiary 'upon the establishment of a valid claim.'"  Id. (quoting 38 U.S.C. § 1970(a)).  The lack of additional guidance in the corresponding regulation, id., reinforces the discretionary nature of the VA's conduct. Accordingly, the discretionary function exception preserves sovereign immunity and bars Shanafelt's negligent disbursement claim against both defendants.

As a second aspect of the negligence claim, Shanafelt alleges that the CCOs "breached their duty of care" when they

"divulged to a room full of people sensitive benefit information without notifying [Shanafelt] of the sensitive nature before divulging said information." (Docket Entry # 1). Shanafelt provides neither any statutory or regulatory backing, nor any case law to support this allegation. Instead, she points to a general duty of care.

Once a claim is filed, the VA has a duty to notify and assist claimants regarding any information or evidence necessary to substantiate a claim for benefit. 38 U.S.C. §§ 5103, 5103A; see also 38 C.F.R. § 3.159. A "claimant" is "*any* individual applying for, or submitting a claim for, *any* benefit." 38 U.S.C. § 5100 (emphasis added). At least one court has found that the government has a "duty of recordkeeping and maintenance of the designation of the beneficiary" of an SGLI policy. See Williams, 2009 WL 799974, at *3; see also Denton, 638 F.2d at 1220; 38 C.F.R. § 9.13.

In Williams, the plaintiff, a beneficiary under an SGLI policy, brought suit against the VA for a breach of duty of care with respect to the policy. Id. at *1. Dismissing the plaintiff's claim as a matter of law, the court found no duty on behalf of the VA beyond one of recordkeeping and maintenance of the policy's beneficiary. Id. at *3. The VA fulfilled this duty when it provided the plaintiff with the file and

information informing her that she was the policy's designated
beneficiary.  Id.

In the case at bar, the VA engaged in similar conduct.  See
id. at *3.  The CCOs delivered and provided Shanafelt with the
pertinent information concerning her status as Sgt. Shanafelt's
beneficiary.  Accordingly, the VA discharged its duty to notify
Shanafelt.  See 38 U.S.C. § 5103.  Shanafelt does not cite any
case law or statute that imposes a duty on the VA to maintain
confidentiality of a *potential* claimant's right to benefits
prior to the filing of a claim for benefits.  Absent any
statute, regulation, or policy, the CCOs therefore exercised an
element of judgment in their disclosure to Fillipone.
Accordingly, the discretionary function exception preserves
sovereign immunity such that Shanafelt's negligent disclosure
claim as to the VA and the United States is dismissed.

II.  Breach of Contract Claim

With respect to Count II, which alleges a breach of "the
SGLI policy agreement by failing to lawfully distribute" the
proceeds of Sgt. Shanafelt's policy to Shanafelt, defendants
argue that Shanafelt fails to identify a statute waiving
sovereign immunity.  (Docket Entry # 18, p. 16).  Furthermore,
for purposes of argument, defendants maintain that even if this
court has subject matter jurisdiction, Shanafelt does "not
adequately allege a breach of contract or a breach of an implied

25

covenant of good faith and fair dealing." (Docket Entry # 18, p. 16). Defendants do not dispute the validity of the contract with Prudential. Rather, they argue that Shanafelt fails to provide sufficient facts to support a breach of this contract because Prudential, not defendants, is responsible for paying benefits. (Docket Entry # 18, p. 16). Indeed, as stated in the complaint, "Prudential paid the policy limits to Christine Shanafelt." (Docket Entry # 18, p. 16). In response, Shanafelt argues that despite prior indications by "many courts" that a plaintiff "may not attempt to characterize a breach of contract action as a cause in tort under the [FTCA]," she was "being cautious and including all of [her] potential claims." (Docket Entry # 20, pp. 10-11).

Under the FTCA, 28 U.S.C. § 2680(h) expressly states that section 1346(b) does not apply to "[a]ny claim arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h). Shanafelt does not provide any other jurisdictional basis for the contract claim. The only jurisdictional basis cited in the complaint is 28 U.S.C. § 1346(b)(1). (Docket Entry # 1, ¶ 6). Under 28 U.S.C. § 1346, this court has concurrent jurisdiction with the United States Court of Federal Claims for a claim "*not exceeding $10,000 in amount*," that is "founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2) (emphasis added). Here, the contract claim seeks

to recover the $128,000 Shanafelt expended to defend against Fillipone's lawsuit. (Docket Entry # 1).

Separately, defendants move to dismiss the contract claim because Prudential, not the VA, is responsible for paying insurance proceeds.[13] As explained by the court in <u>Williams</u>, under the SGLIA, "[n]o contract of insurance is created between the insured and the United States. Thus, actions for nonpayment or other breach of the policy lie against the private insurer, and not the government." <u>Williams</u>, 2009 WL 799974, at *2. A number of other courts adhere to this principle. <u>See</u> <u>Mosby</u>, 423 F. Supp. at 689; <u>Jackson</u>, 398 F. Supp. at 608; <u>Riggans v. United States</u>, 315 F. Supp. 1406; <u>Kercher</u>, 300 F. Supp. 1126; <u>cf. Lucey</u>, 783 F.Supp.2d at 212-13 (D. Mass. 2011) (analyzing SGLI breach of contract claim against Prudential). Moreover, regulation 9.13 instructs that "Actions at law or in equity to recover on the policy, in which there is not alleged any breach

_____

[13] Defendants also argue that the SGLIA preempts the contract claim. (Docket Entry # 18). For purposes of argument _only_, this court assumes that the SGLIA does not preempt any conflicting state law. <u>See</u> <u>Ridgway</u>, 454 U.S. at 53-57 (1981) (allowing the controlling provisions of the SGLIA to preempt inconsistent state law); <u>see also</u> <u>Brewer v. Zawrotny</u>, 978 F.2d 1204, 1207 (10th Cir. 1992); <u>O'Neal v. Gonzalez</u>, 839 F. 2d 1437, 1440 (11th Cir. 1988); <u>cf. Hamilton v. Prudential Ins. Co. of America</u>, 18 F. Supp. 3d 571, 574 (D. Mass. 2014) ("[S]tate law breach of contract and fraud claims against insurer that issued [SGLI] policies pursuant to [SGLIA] were not preempted by federal law, where insurer identified no particular inconsistencies between SGLIA and relevant state law").

of any obligation undertaken by the United States, should be brought against the insurer." 38 C.F.R. § 9.13. For these reasons, Shanafelt's breach of contract claim against both the VA and the United States fails.[14]

CONCLUSION

In accordance with the forgoing discussion, the motion to dismiss (Docket Entry # 17) is **ALLOWED**.

 /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[14] It is therefore not necessary to address the VA's other arguments to dismiss the contract claim.